Mary C. Geddes, Esq.
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant

FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 15 PM 4: 11



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. A03-0086 CR (JWS) |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR AN EVIDENTIARY HEARING ON THE MATTER OF A FINE** |
| SHANE A. MASSEY, | |
| Defendant. | |

I. Introduction

Shane Massey is due to be resentenced on January 13, 2006.[1] Under the pre-*Booker* sentence previously imposed, Mr. Massey was due to be released June 22, 2006.[2] In this memorandum, Mr. Massey provides the justification for a shorter sentence.[3]

---

[1] For the court's information, defense counsel is on leave from December 20, 2005, until January 3, 2006.

[2] Mr. Massey originally received a mid-range (37 to 46 months) of 41 months under the United States Sentencing Guidelines.

[3] The parties are in agreement that the conditions of release may remain the same, and that, also consistent with the earlier judgment, no restitution and no costs of prosecution should be imposed.

105

Shane Massey originally was scheduled to be re-sentenced on January 3, 2006. According to the Bureau of Prisons Inmate Systems Management Department, release on that date would reflect a sentence of 34 months and 20 days. Therefore, a release ten days later would mean a sentence of 35 months. The defendant seeks a time-served disposition of that length; such a sentence is appropriate for reasons stated in Section V.

Mr. Massey, who was unrepresented, was originally fined according to the then-mandatory Sentencing Guidelines, in the amount of $7,500. In this re-sentencing, Mr. Massey would ask that this court find he is unable to pay a fine, in light of his tax obligations and limited assets.

II.  Circuit Law Directs the Sentence Be Vacated, and Resentencing Proceed Without Limitation

In his direct appeal, Mr. Massey successfully established that the district court's enhancement of his sentence in reliance upon judge-made findings under the then-mandatory guidelines was constitutional error. The Ninth Circuit then remanded Mr. Massey's case for an inquiry intended to resolve the third prong of the plain error test: whether the error affected Mr. Massey's substantial rights. *See United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005).

However, in this case, the government stipulated to resentencing, thus relieving Mr. Massey of his burden to persuade "that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Id.* This negotiation was fortuitous because the sentencing court became unavailable, and the *Ameline* court had not

reached the question of what would happen if the sentencing judge became unavailable, although it did speculate that "unavailability will not necessarily result in an inability to proceed . . . . There may be a negotiated sentence." *Ameline*, 409 F.3d at 1079 n.3.

Indeed, the *Ameline* decision specifically anticipated that the "[t]he parties and the district court may agree in a given case to proceed directly to a resentencing proceeding, without the need for submissions by counsel or separate consideration of the question of whether the previous sentence would have been different had the sentencing court known that the Guidelines were not mandatory." *Ameline*, 409 F.3d at 1085 n.10.

> In such a case, the original sentence will be vacated and the district court will resentence with the defendant present. In resentencing the defendant, the district court is permitted to take a fresh look at the relevant facts and the Guidelines consistent with *Booker*, the Sentencing Reform Act of 1984, Rule 32 of the Federal Rules of Criminal Procedure, and this opinion. *See [United States v.] Gunning*, 401 F.3d [1145, 1148 (9th Cir. 2005)].

*Ameline*, 409 F.3d at 1085.

In any event, however, where the sentencing judge becomes unavailable to conduct the limited *Ameline* inquiry, the remedy is to vacate the original sentence and remand for a full resentencing hearing. *See, e.g., United States v. Sahanaja*, ___ F.3d ___, C.A. 04-50504 (9th Cir., December 8, 2005), *citing United States v. Sanders*, 421 F.3d 1044, 1052 (2005).[4]

---

[4] Therefore, the court does not need to determine the appropriateness of modifying an existing sentence, *cf.* Fed. R. Crim. P. 35(b).

3

As reiterated in *Ameline*, Ninth Circuit case law holds that once the district court has decided to resentence, the district court is "free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo." *United States v. Gunning* ("*Gunning* II"), 401 F.3d 1145, 1148 (9th Cir. 2005).[5] The general rule, according to *United States v. Matthews*, 278 F.3d 880, 889 (9th Cir. 2002) (*en banc*), is to "remand for resentencing without limitation on the district court." *Id.* at 885.

III.  The Presentence Report

Shane Massey was charged by indictment with one felony count of corruptly endeavoring to impede the administration of internal revenue laws, under 26 U.S.C. § 7212(a), and with three felony counts of willfully failing to file an income tax return under 26 U.S.C. § 7203. After a jury trial, he was convicted of all counts. He did not file any objections to the draft presentence report. Mr. Massey was unrepresented throughout all district court proceedings.

The presentence report writer had "grouped" all four counts of conviction. (PSR, ¶ 23.) The base offense level would have been established by 2T1.1(a)(2), at an offense level of six. However, the Guideline utilizes the Tax Table, at § 2T4.1, to increase the offense level based upon the income tax not paid, and may include relevant conduct. (*Id.*)

---

[5] This does contrast with the scope of the narrow inquiry following a limited remand under *Booker*. *United States v. Re*, 419 F.3d 582, 583-84 (7th Cir. 2005) ("Post-sentencing events or conduct simply are not relevant to th[e *Paladino* ] inquiry").

4

The PSR writer counted not only the tax loss for 1996 through 1998, but also included "relevant conduct" for two tax years not cited in the indictment. (PSR, ¶ 7.) The tax loss was therefore increased by $4,966 for 1995 and $21,600 for 1999. The total for all five tax years was $100,558.89, and the resulting base offense level was 16. U.S.S.G. § 2T4.1(F) (more than $80,000). (PSR, ¶ 24.)

The PSR writer also indicated that Mr. Massey was also subject to an additional two levels for obstruction of justice based upon the "corrupt endeavor" conduct pleaded and proved to the jury. U.S.S.G. § 3C1.1. (PSR, ¶ 28.) The PSR writer proposed an additional three-level enhancement for a victim-related adjustment at U.S.S.G. § 3A1.2. (PSR, ¶ 26.) This adjustment applies if the victim was a government officer or employee and "the offense of conviction was motivated by such status."

The PSR writer determined that Mr. Massey was in criminal history category I, and the final offense level of 21, and was subject to a sentencing range of 37 to 46 months. (ER 177.)

The PSR writer identified no basis for departure, or for a reduced sentence.

IV. Proposed Addendum to the Presentence Report

The following information was provided from Mr. Massey, who would be available at the time of sentencing to testify as to the truthfulness of the following.

A.  *Residential History*

For the past 35 years, Mr. Massey has resided in Alaska and Arizona. From 1971 to 1974, he lived in Cottonwood, Arizona. He moved to Anchorage, Alaska, in 1974, and then to Valdez, Alaska, where he remained until 1975. In 1975, he returned to Arizona, where he lived in Camp Verde until 1977, and then in Phoenix in 1981.

From 1981 until 1990, Mr. Massey lived in Kenai, Alaska. He then went back to Arizona, where he lived in Queen Valley from 1990 to 1993. He moved to Kenai, Alaska, in 1993, where he remained until 1999. During a portion of 1999 and 2000, he vacationed in his motor home, after which he moved to Wasilla, Alaska, where he remained until his current incarceration.

B.  *Family History*

Mr. Massey was born from the union of Sam Anthony Massey and Edith Valencia Kelly Massey. He has one sister and two brothers: sister Lovel Lee Massey, born May 28, 1935, a nurse-hospital administrator who resides in Arkansas; brother Sam Anthony Massey, Jr., born August 12, 1938, a laborer who resides in Cottonwood, Arizona; and brother David Massey, born September 30, 1943, a retired tropical fish store owner who resides in Moffitt, Colorado. The Masseys' father died 1990, and mother shortly thereafter, in 1991.

C.  *Marital History*

Mr. Massey has been married three times. He and his first wife, Hope, were married from 1967 to 1965, and lived in California during their marriage. They had no children together, and Mr. Massey has lost contact with Hope.

Mr. Massey and Carlene Wilcox were married in 1982 and lived in Kenai, Alaska, until their divorce approximately five years later. Carlene died in the late 1980s from complications of diabetes. They had no children together, but Carlene had two daughters from a prior union, Cathy (who resides in Soldotna, Alaska) and Mistee (who lives in Wasilla, Alaska). Mr. Massey continues to maintain a close relationship with his two stepdaughters.

Diane Keller and Mr. Massey were married in Arizona in 1990 or 1991. They moved to Kenai, Alaska, in 1993, and remained in Alaska until they were divorced in 2004.

D.  *Physical Condition*

Mr. Massey suffers from high blood pressure, but is not taking medication for the condition.

E.  *Mental Health*

Mr. Massey has never been under psychiatric care, nor has he taken any medication for a mental health condition.

F.   *Education*

In 1959, Mr. Massey graduated from Grants Pass High School, in Grants Pass, Oregon. He then attended Santa Anna College, in Santa Anna, California, from 1961 to 1964, where he majored in business. From 1964 to 1969, he attended Los Angles College of Chiropractic, in Glendale, California. Mr. Massey has attended many seminars since completing his formal education. While in BOP custody, Mr. Massey has taken numerous correspondence courses and classes.

G.   *Military Service*

Mr. Massey received a 2S deferment from the United States Department of Defense because he was enrolled in school, and therefore has no military service history.

H.   *Employment History*

During his time in prison, Mr. Massey has worked in various institutional jobs. His initial salary as a kitchen worker was $18 per month, but he now earns $43 per month. While incarcerated, he has paid off his special assessment.

Mr. Massey is a licensed chiropractor. Prior to his incarceration, he practiced in Alaska over more than two decades. From 2000 to 2003, Mr. Massey worked for Dr. Lucas at Lucas Chiropractic in Wasilla. Prior to that, he had a private practice from 1994 to 1999 at the Red Dimond Center in Kenai. During 1993, Mr. Massey worked as a chiropractor for Dr. Koob in Kenai. From 1990 to 1992, he was in Arizona and had a private practice in Queen Valley. From 1981 through 1986, he had a practice in Kenai.

V.      Basis for Time-Served Disposition

    A.      *Sentencing Reform Act*

The district judge, in sentencing, is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" by Congress. 18 U.S.C. § 3553(a). The judge is required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.*, and "the need for the sentence imposed" to satisfy specified criteria:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 770, 160 L. Ed. 2d 621, ___ (2005) (App. A) (Breyer, J.).

    B.      *The Defendant's Age at the Time of Sentencing and Criminal History Category, Weighs Against A Significant Risk of Recidivism*

Under the mandatory Guidelines, age was not relevant pursuant to U.S.S.G. § 5H1.1, unless in unusual cases and in combination with other factors. However, age is a "characteristic of the defendant," *see* 18 U.S.C.A. § 3553(a)(1), which "shall" be considered, *id.*, particularly if it is relevant to a determination of *"the need for the sentence imposed."* 18 U.S.C. § 3553(a)(2) (italics added). Post-*Booker* courts have noted that recidivism is

markedly lower for older defendants, and have declined to impose Guideline sentences because of it. *United States v. Lucania*, 379 F. Supp. 2d 288, 297 (E.D.N.Y. July 28, 2005); *see also United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. April 11, 2005); *Simon v. United States*, 316 F. Supp. 2d 35, 2005 WL 300073 (E.D.N.Y March 17, 2005); *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005); *United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005).

The decision in *Carmona-Rodriguez, supra*, notes that defendants "over the age of forty . . . exhibit markedly lower rates of recidivism in comparison to younger defendants." The Sentencing Commission's study, *Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines,* at 28 (2004), available at http://www.ussc.gov/publicat/Recidivism_General.pdf, shows that Mr. Massey is in the group with the lowest possible risk of re-offending, given his age.

At the time of sentencing in 2003, Mr. Massey was almost 62 years old. Now, he is 64. PSR, cover sheet. He is in Criminal History Category I; therefore, a horizontal departure to a lower criminal history category (to reflect a relatively lower risk of recidivism) is not available to him. The recidivism publication cited above combines age and criminal history category which predicts an even lower rate of recidivism for Mr. Massey. Mr. Massey, as someone in his sixties and in Criminal History Category I, is in the lowest risk group of all offenders. On those bases alone, Mr. Massey should receive a reduced sentence.

Additionally, Mr. Massey's conduct while incarcerated has been consistent with the unlikelihood of his re-offending. He has been a model inmate. He has been in communication with the Internal Revenue Service and has given his approval to three years of tax returns which they prepared, after their consultation. Therefore, a "reduced" sentence to time-served is appropriate because the sentencing objective of "correction" has been more than adequately addressed through Mr. Massey's incarceration and the remaining sentencing objectives of rehabilitation and restitution will be better addressed through Mr. Massey's commencement of supervised release.

C.  *The Defendant's Long History of Legitimate Employment and Related Employability Also Underline His Low Risk of Recidivism*

Similar to "age," a defendant's employment was a discouraged factor under the mandatory Guideline regime, *see* U.S.S.G. § 5H1.5 "not ordinarily relevant", and could only be a basis for a downward departure in unusual circumstances which removed it from the heartland. *See, e.g., United States v. Brady,* 895 F.2d 538, (9th Cir. 1990). Now, this court may consider and incorporate such information, 18 U.S.C. § 3553(a) ("the history and characteristics of the defendant"), into its determination as to the need for the sentence imposed. Section 3553(a)(2).

Shane Massey originally was licensed as an Alaska chiropractor on October 10, 1975. He has maintained his license, although it currently is inactive. Prior to his incarceration, he practiced in Alaska more than two decades. *See* Employment, section IV.H., above. His employability as a chiropractor further lowers the risk of recidivism.

11

According to the June 2005 issue of Federal Probation Journal:

It is estimated that more than 630,000 men and women were released from federal and state prisons in 2004, more than double the number leaving correctional facilities in 1988 (Office of Justice Programs, 2004). Research has shown that roughly two-thirds of former prisoners will re-offend within three years of their release, creating public safety problems in their communities, disrupting the lives of their fragile families, and imposing a tax burden upon their fellow citizens (Langan and Levin, 2002). As a consequence of this growing problem, criminal justice policy makers are seeking to identify correctional and post-release practices that minimize the likelihood of re-arrest and a return to prison.

Many interrelated factors affect recidivism rates including, but not limited to, employment, housing, substance abuse, family support, health and mental heath problems, and peer pressure. Given that these factors are inextricably intertwined, most prisoners returning to their communities are faced with complex and enormous challenges. This article will examine what may be one of their biggest challenges: securing and maintaining employment with a living wage.... While the exact relationship between employment and recidivism is complex and not fully understood, there can be no doubt that it is vitally important in the re-entry process.

A good job is likely to serve as a deterrent to illegal behavior by limiting opportunities for misconduct and providing social incentives for crime-free behavior. Since the vast majority of prisoners returning to their community need to support themselves and their families, it would be impossible for them to succeed without securing employment. The importance of steady employment is undoubtedly recognized by parole officers. In a survey that asked Missouri parole officers to identify the most important aspect of programs for improving parolees' chances for success, the activity most frequently cited (34 percent of respondents) was keeping the offender in steady or stable employment (Seiter, 2002).

Further evidence of the value of employment in the reentry process can be found in recent statistics gathered by the U.S. Probation and Pretrial Services System. In 2003, unemployed offenders under their supervision were revoked at a rate that was more than 500 percent higher than that for those who were employed (Burris et al., 2004). Eighty percent of the offenders who were revoked that year were unemployed.

Federal Probation, Vol. 69, No. 1 at 1.

    D.    *A Defendant's Early - Rather than Delayed - Satisfaction of Outstanding Tax Liabilities Would Serve Sentencing Reform Act Purposes*

In this tax-related case, the court ordered Mr. Massey, as special conditions of his supervised release, to make good faith efforts to cooperate with the IRS, to file past-due tax returns, and to resolve any tax liability.

Achieving Mr. Massey's compliance with the tax laws and maximizing the payment of back taxes would serve the objectives of the Sentencing Reform Act at § 3553(a)(1)(A) ("just punishment for the offense) and (D) ("provide the defendant with needed correctional treatment").

Mr. Massey, a doctor of chiropractic in his sixties, has a limited number of years remaining as a productive worker. While incarcerated, his ability to pay his tax liabilities and to promote a practice and client base, through which he can make meaningful restitution, has been non-existent. To further delay his return to a meaningful level of pay, which he can obtain through a chiropractic practice, undercuts his ability to satisfy his tax liability. If Mr. Massey was resentenced to 41 months, he would be spending much of the next six months in Anchorage, in a halfway house, away from his client base and unable to establish a practice.

The Sentencing Reform Act includes, among its objectives, the making of restitution to any victims of the offense. 18 U.S.C. § 3553(a)(7). While restitution, as such,

was not ordered by the court, his resolution of his tax liability is required, and the court's new sentence should reflect that priority.

  E. *The Court May Consider Sentences Received by Other Similar Defendants in Similar Cases*

Counsel for Mr. Massey would also argue that the time-served disposition is appropriate because the sentences received by other similar defendants in similar cases were shorter than that which sentence imposed by the pre-*Booker* sentencing court.

Previously, consideration of sentencing disparities among defendants with similar records and convicted of similar conduct was limited to that among co-defendants convicted of identical offenses, *United States v. Caperna*, 251 F.3d 827, 830-31 (9th Cir. 2001) (*quoting in part United States v. Daas*, 198 F.3d 1167, 1180-81 (9th Cir. 1999)), or in the consecutive-concurrent decision-making context. *See* 18 U.S.C. § 3584 (requires the sentencing court to consider the factors listed in § 3553(a) to determine whether a consecutive or concurrent sentence is warranted).

Post-*Booker*, this court can now consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" in formulating a just sentence. 18 U.S.C.A. § 3553(a)(6). This legislative mandate serves two purposes: to avoid injustice to the individual defendant and to promote public confidence in the sentencing fairness.

Post-*Booker*, then, counsel for Mr. Massey would point to some disparate sentencing outcomes within this district for what can be termed "tax protestor" cases. The

14

undersigned is personally aware of at least two cases in this district in which older defendants without criminal histories, and with comparably positive work histories, engaged in similar episodes of "corruptly endeavoring to impede the administration" of justice or the tax laws. In *United States v. Helen Smith*, A03-0087 CR (JKS) (convicted of conspiracy, willful failure, and evasion), the defendant received a 24 month prison sentence. In the case of *United States v. Eugene Warner*, A97-0046 CR (JKS) (convicted of corruptly endeavoring), Mr. Warner received an 18-month prison term. While there have been two longer sentences meted in other cases of which Mr. Massey is aware, the undersigned believes that those defendants did not have similar records or their acts were not similar.

This information was not presented at the original sentencing because it could not be considered under a mandatory Guideline system.

VI.     The Defendant's Ability to Pay A Fine Must be Determined

Mr. Massey respectfully requests an evidentiary hearing on the matter of the fine, so as to preserve an opportunity for defense counsel's presentation on Mr. Massey's financial status. Mr. Massey currently is in the process of being transported by the United States Marshal Services, and the undersigned counsel will be out of the office on leave from December 20, 2005, through January 2, 2006.

DATED this 15th day of December, 2005.

                          FEDERAL PUBLIC DEFENDER
                          FOR THE DISTRICT OF ALASKA

                          Mary Geddes
                          Assistant Federal Defender

Certification:

I certify that on December 15, 2005, I hand
delivered a copy of this document to:

Tom Bradley, Esq.
U.S. Attorney's Office
222 West 7th Avenue, No. 9, Room 253
Anchorage, AK 99513-7567

Lenora L. Roehling

16